*578 NIEMEYER, Circuit Judge,
dissenting:
Under an automobile rental contract between the United States government and The Hertz Corporation, Hertz agreed to rent automobiles to the government and its employees while on official business for a specified rental rate and to provide the person renting the automobile with $100,000 insurance coverage. In this case, a government employee rented an automobile from Hertz, but not under the Hertz-government contract rate. The employee asked for, and was given a lower weekly rate Hertz established for the public, which included only $25,000 insurance coverage. Nevertheless, the majority holds that Hertz must provide $100,000 of insurance coverage under the Hertz-government contract because the employee was on government business. In doing so, the majority ignores express terms in the rental agreement between Hertz and the government employee and imposes unassumed risks on Hertz. Respectfully, I cannot agree with such a holding.
The facts, established by findings of the magistrate judge, are not challenged on appeal. Counsel confirmed as much at oral argument. Tolliver Gene Swallow, a captain in the Naval Reserve, resided in California and worked in civilian life as a pilot for USAir. He received orders from the Navy to serve his two-week reserve officer summer training at Dam Neck, Virginia, in June 1988. His orders authorized him to obtain housing and a rental ear for the two-week period.
After receiving his orders, Captain Swallow called Hertz and reserved an automobile for pick up at the Norfolk International Airport. When he arrived at the Hertz counter in Norfolk, Captain Swallow requested the “best available” rental rate, discussing discounts through AAA and USAir. He indicated that Hertz had an “outstanding program for USAir employees,” and this is why he rented from Hertz. During his conversation with the Hertz sales representative, Captain Swallow mentioned that he was in Norfolk with the Navy to attend military school. The Hertz representative rented Swallow a full-size automobile under the “AFW” (“Affordable Weekly”) rate of $219.59 per week, purportedly the lowest rate available to Swallow.
While Hertz had an agreement with the government under which it agreed to rent the same full-size automobile to government employees for $222 per week, Captain Swallow did not ask for, nor did the Hertz representative give him, the government rate. The magistrate judge explicitly found: “Swallow did not identify himself as traveling under the government orders, that is, the military orders; nor did he seek the government rate.” The magistrate judge also found that the Hertz sales representative did not rent Swallow the vehicle under the government rate. Thus, he concluded: “I am finding that in this case there was no rental agreement reached between Mr. Swallow and [Hertz] that was entered into under this [Hertz-government contract].”
The record establishes not only that the “AFW’ and government rates were different, but also that each rate included different benefits. The AFW rate, which was the lower rate, only included, for example, $25,-000 of insurance coverage. On the other hand, the government rate included $100,000 of insurance coverage. Moreover, the two rates had different daily charges if the vehicle was returned before the expiration of a week. After the accident in this case, when Swallow returned the damaged vehicle before having used it for an entire week, he was charged a daily rate of $50, which is the amount chargeable under the “AFW” rate. The government daily rate would have been $37.
Even though Swallow did not rent under the government rate, the majority would have Hertz and its insurer provide Swallow with the benefits of the government rate. The logic implied by the holding is that when any government employee rents a vehicle, even if he says “I do not want to rent under the government contract,” Hertz must insist on charging the employee the government rate in order to recoup the cost of providing the benefits included in that rate.* This *579 notion violates fundamental principles of contract law by dishonoring the will of the parties to the actual rental agreement. I submit that it also abandons common sense.
The majority relies on the contract provision which obligates Hertz unconditionally to provide $100,000 of insurance to the government and its employees who rent from Hertz. It concludes in essence that this agreement is an insurance contract, providing insurance to all government employees using Hertz rental vehicles, regardless of the circumstances of each rental agreement. This reading, I believe, fails to acknowledge all of the terms of the contract.
The terms of the Hertz-government contract are set forth in a five-page, single-spaced document that includes rates, benefits, and conditions. It begins, “The Hertz Corporation agrees to the terms and conditions set forth in this agreement and offers the following vehicle rental rates.” That language clearly connects benefits with rates. In addition, the contract specifies that “rates do not include ... Personal Accident Insurance and Personal Effects Coverage.” But it does state that Hertz will provide $100,000 liability insurance in connection with the “use of the vehicle as permitted by this Agreement.” Finally, the contract provides, “It is understood that the Government and its employees are not obligated to purchase any services offered by The Hertz Corporation under the terms of this agreement.” And indeed, as the magistrate judge found, Captain Swallow did not purchase the benefits and conditions provided under that contract.
The common sense reading of the Hertz-government contract leads to the conclusion that for the quoted rates, Hertz agreed to provide the stated benefits, including $100,-000 of insurance coverage. If a government employee refuses to pay the rate, but instead invokes some other lower rate, it follows that the employee does not get the benefits agreed to between the government and Hertz.
I would thus affirm the judgment of the district court, and accordingly I dissent.

 Hertz obtained its insurance from Royal Insurance Company, and Hertz agreed to pay premiums based on "actual exposures.” The insurance contract provided that the premium "shall *579 be upon a rate applied to each Rental.” Even though such premiums would have to be based on data about persons renting under the Hertz-government contract, the majority renders that calculation impossible when it concludes that Hertz agreed to provide such insurance “to any government employee who rents a Hertz vehicle on official business, regardless of the rate he receives." (Emphasis added).